## No. 27400

**Doyle T. Johns, Jr., District Attorney, Thirteenth Judicial District v. District Court in and for the Thirteenth Judicial District, State of Colorado, and The Honorable Earl A. Wolvington, District Judge in and for the Thirteenth Judicial District, State of Colorado**

(561 P.2d 1)

Decided February 22, 1977.                    Rehearing denied March 14, 1977.

Doyle T. Johns, Jr., District Attorney, William E. Shevlin, Deputy, for petitioner.

Theodore A. Borrillo, David A. Sorenson, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

On October 13, 1976, this court issued a rule to show cause why the respondent district court should not reinstate the charge of felony menacing[1] in that court's criminal action number CR-59. We now make the rule absolute.

In April, 1976, petitioner Doyle T. Johns, District Attorney, filed a criminal information in the Sedgwick County District Court charging the defendant McEntee, a Colorado State Patrolman, with felony menacing[2] and misdemeanor first-degree official misconduct.[3]

At the preliminary hearing, the only testimony was that of the complaining witness (Best), who testified to the following events. On September 14, 1975, Best and a friend, while parked in a lot in Ovid, Colorado, were approached by the defendant in an unmarked vehicle. The defendant ordered Best to get out of his car, searched him, and then ordered him to get into the rear seat of the patrol car. The defendant advised Best that he was being taken to jail in Julesburg. When Officer McEntee twice refused to answer Best's inquiries as to the reason for the arrest, Best said "you're some kind of a pig." The defendant thereupon drew his gun, stuck it in Best's face, and called him a punk. The defendant then handcuffed Best, moved him to the front seat, and proceeded toward Julesburg.

---

[1] Section 18-3-206, C.R.S. 1973.
[2] *Id.*
[3] Section 18-8-404, C.R.S. 1973.

Best further testified that enroute McEntee repeatedly called him "punk" and "hot shit" and at one point invited Best to fight and offered to put his gun in the trunk. Best answered the challenge by agreeing to fight provided another officer, whom he named, would be the referee. After Best's response, McEntee became excited, again engaged in name-calling, and drove faster. McEntee next stopped at an old abandoned gas station, got out of the car, and opened the passenger door. At this juncture, he said "you know what we do with punks like you in Denver? We blow their fucking brains out." Best, who did not respond, testified that although he did not see McEntee pointing a gun at him, he felt its "presence." McEntee then said "do you want to run" to which Best replied "no," that he wanted to go to jail.

Best further testified that he was finally advised at the jail that he would be charged with careless driving, based apparently on an incident earlier that same evening when Best allegedly passed McEntee while spinning his wheels and kicking up dust.

On cross-examination at the preliminary hearing, Best admitted that in the course of approximately five hours he had drunk some wine and a few bottles of beer. In addition, it was brought out that during the second incident (where Best felt the "presence" of McEntee's gun) Best did not see, feel or hear a gun. The testimony as to the amount of alcohol consumed and as to whether Best had actually seen the gun was not entirely consistent with the testimony he gave at his trial on the careless driving charge.

At the conclusion of the preliminary hearing, the court dismissed the charge of felony menacing. In making its ruling, the court stated:

"I don't think that there has been sufficient evidence to establish probable cause that this officer committed the crime of felony menacing. This Best is a big guy, had been drinking, and undoubtedly was — well, mouthing off as he said; called the officer a pig. I don't think the officer has to wait until he's struck or shot at before he is justified in drawing a gun. That's why they have them. At least it isn't sufficient conduct that would justify going to trial on the fifth class felony. I don't think that any felony was committed. . . ."

■ Under Crim.P. 7(h), the preliminary hearing is not a mini-trial. Its limited purpose is to determine whether there is probable cause to believe that a crime was committed and that the defendant committed it. *Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265 (1975); *Maestas v. District Court*, 189 Colo. 443, 541 P.2d 889 (1975).

■ In stating "I don't think the officer has to wait until he is struck or shot at before he is justified in drawing a gun," the trial judge was, in effect, speculating on the officer's defense and the probability of conviction. The evidence was that the officer had patted Best down and found no weapon of any kind. There was no evidence that Best threatened the

defendant by either actions or words. Whether the officer was *justified* in drawing his gun is a matter of defense and properly determinable by the trier of fact in a trial on the issue of guilt.

The court did not apply the test we laid down in *Hunter v. District Court, supra,* where we held that "a judge in a preliminary hearing has jurisdiction to consider the credibility of witnesses only when, as a matter of law, the testimony is implausible or incredible."

In *Hunter,* this court went on to say that "when there is a mere conflict in the testimony, a question of fact exists for the jury, and the judge must draw the inference favorable to the prosecution." *Id.* Even considering the testiomony of the complaining witness in the light most favorable to the defendant, Best's testimony is not implausible or incredible as a matter of law. The court, therefore, was not warranted in considering Best's credibility.

By the same reasoning, we cannot agree with the contention of the respondents that because of the court's determination that the defendant was provoked by Best's remarks the subject charge was properly dismissed. Justification is a matter of defense which, of course, can be raised at trial by the defendant. The record established that the complaining witness called the defendant a "pig." But whether such name-calling, especially in light of the defendant's refusal to answer Best's inquiries as to the reasons for the arrest, is adequate justification for the defendant to draw his gun and, during the gas station incident to implicitly threaten Best, is clearly a jury question. The court, by commenting that the conduct of the complaining witness was sufficient provocation, was in effect stating that the defendant had a good defense. Such a determination by the court, however, is not a substitute for a trial on the merits.

Finally, the respondents contend that the court properly concluded that the evidence at the preliminary hearing was not sufficient to establish probable cause for the offense charged.[4] They argue that since the defendant's conscious object during the first incident was to use the force reasonably necessary to accomplish the arrest and to defend himself, the defendant lacked the requisite intent[5] to place Best in fear of imminent serious bodily injury. They further contend that since there is no direct evidence that the defendant unholstered his gun during the incident at the gas station, the second incident cannot serve as the basis for a felony menacing charge.

---

[4] Section 18-3-206, C.R.S. 1973, states:
"A person commits the crime of menacing if, by any threat or physical action, he intentionally places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but if committed by the use of a deadly weapon, it is a class 5 felony."
[5] Section 18-1-501(5), C.R.S. 1973 (1976 Supp.), provides in part:
"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

Again we do not agree with the respondents. The testimony at the preliminary hearing was that Best remarked that the defendant was "some kind of a pig" when the defendant twice refused to tell Best why he was being arrested. The defendant reacted by pulling his revolver on Best. While we agree that the use of deadly force is justified under certain circumstances,[6] it does not appear from the evidence that the defendant's actions were within the statute authorizing the use of deadly physical force. Although we do not condone Best's word choice in expressing dissatisfaction, such language has become common and did not, under the state of the record, justify the response of the defendant.

As for the second incident, on the way to the jail, the defendant made the unprovoked remark to Best about "blow[ing] [his] fucking brains out" and then asked Best if he wanted to run. The obvious implication of the remarks to Best was that if Best were to run he would be shot. Regardless of the implications of this incident, the threatening use of the gun on the initial contact was sufficient evidence of felony menacing to bind the defendant over for trial.

The rule is made absolute.

MR. JUSTICE GROVES and MR. JUSTICE CARRIGAN concur in the result.

MR. JUSTICE ERICKSON dissents.


MR. JUSTICE GROVES concurring in the result:

I dissented in *Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265 (1975), for the reason that there I did not think that the judge conducting the preliminary hearing abused his discretion. Here, I think there was an abuse of discretion and would predicate the result solely on that ground.

MR. JUSTICE CARRIGAN concurring in the result:

---

[6] Section 18-1-707(2), C.R.S. 1973 (1976 Supp.), provides:

"A peace officer is justified in using deadly physical force upon another person for a purpose specified in subsection (1) of this section only when he reasonably believes that it is necessary:

"(a) To defend himself or a third person from what he reasonably believes to be the use or imminent use of deadly physical force; or

"(b) to effect an arrest, or to prevent the escape from custody, of a person whom he reasonably believes:

"(I) Has committed or attempted to commit a felony involving the use or threatened use of a deadly weapon; or

"(II) Is attempting to escape by the use of a deadly weapon; or

"(III) Otherwise indicates, except through a motor vehicle violation, that he is likely to endanger human life or to inflict serious bodily injury to another unless apprehended without delay."

At the time *Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265 (1975), was decided, I was not a member of this court. Had I been here, I would have dissented. In my view, *Hunter* deprived trial judges of normal judicial discretion when conducting preliminary examinations in criminal cases. This frustrates the purpose of the preliminary examination, to screen out at an early stage criminal cases filed without sufficient credible evidence to support them. To require trial of such cases merely wastes the time and energy of jurors, witnesses, judges, and court personnel. As this case illustrates, there are adequate means of correcting the rare instances of abuse of discretion.

I am authorized to state that MR. JUSTICE ERICKSON joins in this opinion.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. Although the facts may approach the result dictated by the majority opinion, the reasoning and law set forth extends this court's divided decision in *Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265 (1975). I believe the reliance in the majority opinion upon *Maestas v. District Court*, 189 Colo. 443, 541 P.2d 889 (1975), is misplaced. As the author of the majority opinion in *Maestas*, I believe that it offers little support for the result reached in this case. Moreover, the reasons which I set forth in my dissent in *Hunter v. District Court, supra,* are reinforced by the construction of the *Hunter* decision which the majority adopts in this case.