**Robert N. MILLER, District Attorney, Nineteenth Judicial District, Weld County, Colorado, Petitioner,**

v.

**DISTRICT COURT In and For the NINE-TEENTH JUDICIAL DISTRICT, State of Colorado, and the Honorable Jonathan W. Hays, District Judge In and For the Nineteenth Judicial District, State of Colorado, Respondents.**

No. 81SA445.

Supreme Court of Colorado, En Banc.

March 8, 1982.

Robert N. Miller, Dist. Atty., William G. Pharo, Deputy Dist. Atty., Nineteenth Judicial Dist., Greeley, for petitioner.

John A. Dicke, Denver, for respondents.

DUBOFSKY, Justice.

In this original proceeding, we issued a rule to show cause why the respondent Weld County District Court's order dismissing an information charging the defendant, James Penich, with felony theft, section 18–4–401, C.R.S.1973 (1978 Repl. Vol. 8) should not be vacated.[1] The district court

---

1. Section 18–4–401 provides in pertinent part: "(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive

dismissed the information at the conclusion of the preliminary hearing because it determined that the prosecution had not established probable cause to believe that the defendant committed the crime of theft. We disagree and make the rule absolute.

The defendant met with Wesley Box, the owner of Jeremiah Corporation (the corporation), in December 1979. The corporation rented frac tanks[2] to drilling companies, and because business was slow, forty-four unused tanks were stored in a yard in Weld County, three miles North of Brighton. The defendant offered to sell the tanks for the corporation. After a second meeting between Box and the defendant, Box's attorneys drew up an agreement whereby the defendant would deliver to the corporation certified or cashier's funds from the purchaser before delivery of a tank, and the corporation would pay the defendant a commission on each sale. Two meetings were scheduled to sign the agreement, but the defendant failed to attend either of them.

In March 1980, after Box hired a different person to solicit tank rentals, the corporation discovered only twenty-two tanks in the storage yard. The manager of the corporation testified at the preliminary hearing that nine 750-barrel tanks worth $12,500 each and thirteen 500-barrel tanks, worth $8,000 each, were missing. The manager located four tanks, which were identified by a yellow stripe, corporation decals and serial numbers, at a nearby business. He discovered that the defendant had sold the tanks to individual purchasers and a heavy duty moving company had delivered the tanks.[3] The defendant never paid the corporation any of the money he received for the tanks.

the other person permanently of its use or benefit; or
  (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; . . . .
      *   *   *   *   *   *
(2) Theft is:
      *   *   *   *   *   *
  (d) A class 3 felony if the value of the thing involved is ten thousand dollars or more."

A propane distributor testified at the preliminary hearing that he bought two tanks from the defendant, one in January 1980, and the other in March 1980. The distributor paid $11,300 for the 750-barrel tank with a check made out to James Penich, and the check was cashed. The defendant gave the purchaser a bill of sale for the tank and arranged for its delivery.

The defendant did not testify, but his counsel argued that there was an agreement between Box and the defendant which gave the defendant the authority to sell the tanks. Counsel also argued that the defendant did not attempt to conceal his actions nor intend to deprive the corporation of its property.

At the conclusion of the hearing, the district court indicated that had the defendant signed the agreement, his failure to pay would not be subject to a criminal action. Therefore, the court ruled that the defendant could not be prosecuted for what it termed a breach of contract. The court also found that because the defendant made no attempt to conceal his identity, the evidence was insufficient to establish intent to permanently deprive the corporation of the use or benefit of a thing of value. The district court concluded that the evidence failed to establish probable cause that the defendant committed theft and ordered the cause dismissed.

The preliminary hearing is a screening device used to determine whether probable cause exists to support charges that an accused committed a particular crime. Crim.P. 7(h); *People v. Johnson*, Colo., 618 P.2d 262 (1980); *People v. Treat*, 193 Colo. 570, 568 P.2d 473 (1977); *Maestas v. District Court*, 189 Colo. 443, 541 P.2d 889

2. A frac tank is a storage vessel for fluids used in drilling operations to fractionate sand and release oil.

3. An investigator in the sheriff's office found most of the tanks through the bills of lading from the moving company. In a separate civil action against the purchasers, the corporation obtained the return of seventeen tanks.

(1975). The probable cause standard requires evidence sufficient to induce a person of ordinary prudence and caution to a reasonable belief that the defendant committed the crimes charged. *People v. Armijo*, 197 Colo. 91, 589 P.2d 935 (1979); *People v. Treat, supra.*

The evidence presented must be viewed in the light most favorable to the prosecution; evidence sufficient to support a conviction is not necessary at this stage of the proceedings. *People v. Luttrell*, Colo., 636 P.2d 712 (1981); *People v. Armijo, supra; People v. Treat, supra; People v. District Court*, 186 Colo. 136, 526 P.2d 289 (1974). If the testimony conflicts, the trial court must draw an inference for the prosecution. *People v. Luttrell, supra; People v. Johnson, supra; Miller v. District Court*, 193 Colo. 404, 566 P.2d 1063 (1977). Therefore, the duty of the district court here was to evaluate the sufficiency of the evidence presented at the hearing to establish probable cause that the defendant committed felony theft under section 18–4–401, C.R.S. 1973 (1978 Repl. Vol. 8). Intent to commit the offense may be inferred from the defendant's conduct and the circumstances of the case. *People v. Luttrell, supra; People v. Johnson, supra; People v. Becker*, 187 Colo. 344, 531 P.2d 386 (1975).

Here, the prosecution witnesses testified that twenty-two of the frac tanks owned by the corporation, with an aggregate value of $216,500, were missing, and most of them were found in the possession of those who named the defendant as the seller of the tanks and the person who arranged for their removal from the storage yard. One of the purchasers testified at the preliminary hearing that he paid the defendant for two of the tanks; the manager of the corporation testified that the corporation received no money from the defendant.

Whether there existed a debtor-creditor relationship between the defendant and the corporation or an oral agreement which might be construed to authorize the defendant's acts are matters of defense at trial. *People v. Luttrell, supra; People v. John-son, supra; see Johns v. District Court*, 192 Colo. 462, 561 P.2d 1 (1977). The defendant is not entitled to the protection of his interpretation and the application of an oral agreement to sell the tanks at this stage of the proceedings. *People v. Johnson, supra.*

The district court also erred when it concluded that the evidence was insufficient to prove specific intent to permanently deprive the corporation of the property in question. Because intent to commit felony theft may be inferred from the defendant's conduct in the circumstances of the case, *People v. American Health Care, Inc.*, 42 Colo.App. 209, 591 P.2d 1343 (1979), we conclude that the evidence warrants a reasonable belief that the defendant possessed the requisite intent and thus, supports a finding of probable cause, when all inferences are drawn in favor of the prosecution.

Accordingly, the rule is made absolute, and the cause is remanded to the district court with directions to reinstate the information.